1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN KARL RAY BUNTON, | Case No.  1:23-cv-00211-SAB |
| Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN A DISTRICT JUDGE TO THIS ACTION |
| v. | |
| CITY OF MENDOTA POLICE CHIEF, et al., | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS |
| Defendants. | (ECF Nos. 12, 14, 15) |
| | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Plaintiff Benjamin Karl Ray Bunton ("Plaintiff"), a Montana state prisoner (BR-7892) proceeding *pro se* and *in forma pauperis*, initiated this civil rights action pursuant to 42 U.S.C. § 1983 on February 13, 2023.  (ECF No. 1.)  The Court screened the complaint, determined it did not state a cognizable claim, and directed Plaintiff to file an amended complaint.  (ECF No. 9.) On March 27, 2023, Plaintiff filed a first amended complaint ("FAC").  (ECF No. 12.)  Plaintiff's FAC was screened and found to state cognizable claims under the First and Fourth Amendments. (ECF No. 14.)  Plaintiff was ordered to file either a second amended complaint or notice of intent to proceed on the cognizable claims within thirty days.  (Id. at 22.)  On June 12, 2023, Plaintiff filed a notice stating that he wished to proceed on the cognizable claims.  (ECF No. 15.)

Accordingly, the Court recommends that this action proceed on Plaintiff's First and Fourth Amendment claims against Defendants Mendota Police Officer Renteria, Building Inspector/City Manager Christian Gonzalez ("Gonzalez"), and the City of Mendota Chief of Police (the "Police Chief"), as detailed herein, and that all other claims be dismissed for failure to state a claim.

## I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The standard under Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly (Twombly), 550 U.S. 544, 555 (2007) (internal quotation marks omitted)). Thus, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (citations omitted).

A document filed pro se, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (on civil rights actions filed by pro se prisoners, pleadings should be liberally construed with any doubt resolved in the pro se prisoner's favor). Nevertheless, while the special leniency afforded to pro se civil rights litigants somewhat loosens the

procedural rules governing the form of pleadings, it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Federal Rules of Civil Procedure 8, 10, and 12.  Rather, as both the Supreme Court and Ninth Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10, and 12 are procedural rules that even *pro se* civil litigants must follow.  See McNeil v. U.S., 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (holding *pro se* litigants are held to same procedural rules as litigants with counsel).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678–79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  As for the nature of what is "facially plausible," the Supreme Court explained that "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  Iqbal, 556 U.S. at 679.  Thus, the "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

As a general rule, the Court must limit its review to the operative complaint and may not consider facts presented in extrinsic evidence.  See Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001).  Materials submitted as part of the complaint, however, are not "outside" the complaint and may be considered.  Id.; Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Moreover, the Court is not required to accept as true conclusory allegations which are contradicted by exhibits to the complaint.  See Sprewell v.

1   Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d

2   1187 (9th Cir. 2001); Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295–96 (9th Cir. 1998).

3   A plaintiff can also "plead himself out of a claim by including unnecessary details contrary to his

4   claims."  Sprewell, 266 F.3d at 988.  Leave to amend may be granted to the extent that the

5   deficiencies of the complaint can be cured by amendment.  Cato v. U.S., 70 F.3d 1103, 1106 (9th

6   Cir. 1995).

7                                                    **II.**

8                          **FIRST AMENDED COMPLAINT ALLEGATIONS**

9           While he is currently incarcerated at the Montana State Prison, Plaintiff indicates the

10  actions that are the subject of the instant complaint occurred in the City of Mendota (prior to his

11  current incarceration).  (FAC at 2, ECF No. 12.)  The FAC purports to assert causes of action for:

12  (1) violations of the First Amendment liberty clause/pursuit of happiness; (2) violations of the

13  Eighth Amendment, cruel and unusual punishment/illegal search and seizure; and (3) violations

14  of the Fourteenth Amendment, equal protection clause (id. at 4–6), against Defendants Gonzalez;

15  Police Chief; Mendota Police Officers Workinton, Renteria, Amador, Benitez, and Davis; and

16  City Clerk Mary Lou Hernandez ("Hernandez") (collectively, "Defendants").  The Court accepts

17  Plaintiff's allegations in the FAC as true only for the purpose of the *sua sponte* screening

18  requirement under 28 U.S.C. § 1915.

19          Plaintiff alleges that, on January 15, 2012, at around 11:45 p.m., he was walking from the

20  local Fast Trip Gas Station, when Defendant officer Renteria began following him.  (Id. at 13.)

21  Plaintiff alleges he asked Renteria what he wanted, and Renteria told him, "you need to get out of

22  town."  (Id.)  When Plaintiff told Renteria he was being harassed and has lived in Mendota all his

23  life, Renteria replied, "don't [blame] me, I warned you."  (Id.)  Plaintiff alleges that later that

24  night, Renteria followed him to a residence at 1907 Jennings Circle.  (Id.)  As Plaintiff left that

25  address, Renteria pulled up to the front of the residence, and ordered Plaintiff to put his hands on

26  the hood of the police car.  (Id.)  Plaintiff alleges he continued to walk away, stating, "I'm not on

27  parole anymore, do you have a warrant?"  (Id.)  Renteria replied, "If you don't turn around and

28  put your hands on the hood, I'm going to blow your fuckin' head off."  (Id. at 13–14.)  Thereafter,

Plaintiff alleges that Renteria falsely arrested him and transported him to the Fresno County jail. (Id. at 14.)  When Plaintiff told Renteria he was violating Plaintiff's civil rights, Renteria replied, "I'm actually helping you Benjie, you should find a place to stay in Fresno."  (Id.)  Plaintiff alleges he was never charged with any crime as a result of this incident.  (Id.)

Plaintiff alleges that, on February 10, 2012, Defendant Building Inspector/City Manager Gonzalez trespassed onto Plaintiff's property with unidentified Mendota police officers, broke into Plaintiff's home while he was at work, and conducted an inspection of the rental property. (Id. at 9.)   Plaintiff alleges Defendant Gonzalez knowingly filed false information about Plaintiff's residence, which resulted in it becoming condemned.  (Id.)

Plaintiff alleges that, on February 12, 2012, Defendant Police Chief banged on the front door of Plaintiff's home at 6:30 a.m., with a gun in his hand and four Mendota officers, including Defendant Officer Amador, blocking Plaintiff's driveway.  (See id. at 8, 16.)  When Plaintiff asked the Police Chief what the visit was about, the Police Chief yelled profanities at Plaintiff and told him he had fifteen minutes to get his belongings and leave.  (Id. at 8.)  Plaintiff stated he had just paid his rent and the sheriff does evictions.  (Id.)  The Police Chief told Plaintiff if he was not gone when the Police Chief returned, he would "be sorry."  (Id. at 8–9.)  Plaintiff alleges the Police Chief later returned and ordered the other officers to place Plaintiff's belongings on the sidewalk.  (Id. at 9.)  Plaintiff alleges he was forced from his residence at gunpoint.  (Id. at 16.) Plaintiff claims the Police Chief's actions "violated [his] rights to liberty clause and search and seizure.  (Id. at 9.)  Plaintiff alleges that, after this incident, "the 'harassment' began to intensify." (Id.)

Three days after Plaintiff was evicted from the rental property (i.e., February 15, 2012), Plaintiff alleges the property was sold and a family moved into the property without any repairs having been completed.  (Id.)

Plaintiff claims Defendant officer Workinton violated his civil rights on numerous occasions, even after Plaintiff filed several complaints against Workinton to the City of Mendota's local government.  (Id. at 10.)  Plaintiff claims that, even after receiving training, Workinton and other unidentified officers continued to violate Plaintiff's civil rights.   More

specifically, Plaintiff claims Workinton began to harass him after he was evicted from the rental property.  (Id.)  Plaintiff claims that, on February 20, 2012, Workinton "falsely arrested" him. (Id.) On March 2, 2012, Workinton saw Plaintiff walking down the street and "pull[ed] the police vehicle in front of [] Plaintiff, nearly striking [him]."  (Id.)  Plaintiff alleges Workinton searched him for no reason and "falsely" arrested him, stating to Plaintiff, "why don't you just stay in Fresno, you're going to end up hurt."  (Id.)  Plaintiff alleges "these incidents" continued for several months.  (Id.)

After his February 2012 eviction, Plaintiff alleges he discovered Defendant Amador had impregnated a friend/neighbor's underage daughter.  (Id. at 16.)  Thereafter, Plaintiff claims Defendant officers Amador and Benitez "began a campaign of harassment, false arrest, and brutality."  (Id.)  More specifically, Plaintiff alleges that, on April 15, 2012, Amador tased Plaintiff, filed false charges against him, and placed him in the Fresno County Jail, after which Plaintiff was released "and never adjudicated" (which the Court infers means criminally prosecuted).  (Id.)

On or around May 5, 2012, Plaintiff alleges Defendant officers Davis and Workinton showed up to a job site at which Plaintiff was working, and made false statements which resulted in Plaintiff losing his job.  (Id. at 12, 16–17.)  Plaintiff alleges he had "a few choice words [for] Officer Workinton and Officer Davis as they followed [him] down the street."  (Id. at 12, 17.) Plaintiff alleges Workinton and Davis continued to "harass" him until he took his cell phone out and began to record the incident.  (Id.)  Then Workinton and Davis became angry, pulled the police vehicle in front of Plaintiff, nearly hitting him with the vehicle.  (Id.)  Plaintiff alleges Workinton and Davis exited the vehicle and attempted to stop him as he walked down the street. (Id. at 12.)  Workinton told Plaintiff, "I'm going to end your ass" (id.); Davis told Plaintiff, "stop or we are going to fuck you up" (id. at 17).  Then, Davis tackled Plaintiff from behind, stating "you ain't so tough now," and Workinton jumped on Plaintiff's back, kneeing Plaintiff in the lower back, and stated, "I'm taking your ass to jail."  (Id. at 12, 17.)  Plaintiff alleged he was then tased.  (Id. at 17.)  Davis stated, "you think we gonna let you get away with recording us." (Id. at 12.)  Plaintiff claims he was falsely arrested and taken to the Fresno County jail to be falsely

charged; however, he was never charged, and his phone and money were taken and never returned.  (Id. at 12, 17.)

On or around August 30, 2012, while standing in the parking lot of Valley Food Market and talking with the owner of the store, Defendant officers Workinton and Benitez approached Plaintiff, stating "we got a call about you."  (Id. at 10–11.)  The store owner stated, "[he's] been right here with me."  (Id. at 11.)  Workinton stated, "where did you [get] that juice, did you steal it," to which the store owner replied, "he just bought it from my store."  (Id.)  Despite this answer, Benitez attempted to grab Plaintiff, and Workinton began tasing Plaintiff.  (Id.)  Plaintiff alleges Workinton tased him over four times.  (Id.)  Plaintiff alleges he fell to the ground, paralyzed from the tasing, and then Workinton and Benitez handcuffed Plaintiff, bound his feet, grabbed him by the elbows, and dragged him through the parking lot and across the street to a police truck, at which point Workinton and Benitez slammed Plaintiff's head into the side of the police vehicle three times.  (Id.)  Plaintiff alleges he was taken to the Fresno County jail, 33 miles away.  (Id.)  Plaintiff alleges that, during the drive, Workinton pulled over and stated, "if I have to bring you to jail again, I'm just going to pull into one of these almond orchards or grape [vineyards] and put a bullet in the back of your head."  (Id. at 11–12.)

Plaintiff claims each time he was arrested, he was denied medical attention until after he was released from jail.  (Id. at 12.)  Plaintiff claims he filed several complaints with the police department and city government, and the police department was ordered to take training on constitutional rights and sensitivity training.  (Id. at 12–13.)  However, Plaintiff claims the training was "to no avail," and the Mendota police still require training, "as constitutional violations continue."  (Id. at 13.)

Plaintiff alleges that, in May 2022, he returned to the City of Mendota and encountered Renteria, now the Sergeant of the Mendota Police Department, while working at a job for a local business.  (Id. at 14.)  Plaintiff alleges Renteria and an unidentified officer came to Plaintiff's work and began questioning Plaintiff before the business owner arrived.  (Id.)  After Plaintiff's boss arrived and saw Plaintiff speaking with the officers, Plaintiff lost his job.  (Id.)  Plaintiff claims this incident occurred one week after he made a presentation at a city council meeting.

1    (Id.)   Thereafter, Plaintiff alleges Renteria and the other officer began following him.   (Id.)

2    Plaintiff alleges he told Renteria he was not on parole.  (Id.)

3         Plaintiff alleges that, in August and October 2022, Defendants Gonzalez and the Police

4    Chief harassed Plaintiff at city council meetings, at which time Plaintiff was "threaten[ed],

5    pushed against the wall and searched for no reason … [and] threat[ened] not to come to any more

6    meetings." (Id. at 9.)  Plaintiff claims these actions violated his rights "under search and seizure

7    and liberty." (Id.)

8         On November 15, 2022, Plaintiff alleges he was assaulted by an off-duty Mendota police

9    officer, who struck Plaintiff in the head with a baseball bat. (Id. at 15.)

10        On or around November 18, 2022, Plaintiff alleges he had a pre-scheduled meeting with

11   Defendant Gonzalez.  (See id. at 14–15, 18.)  Renteria came to city hall in response to a "false[]

12   report" from Defendant City Clerk Hernandez.[1]  (Id. at 14.)  With "approval of the current chief

13   of police," Defendants Gonzalez, Renteria, and unidentified Mendota police officers pushed

14   Plaintiff up against a wall outside the city council meeting, searched him, and threatened him.

15   (Id. at 15, 18.)  Then, prior to the end of the city council meeting, Plaintiff alleges police officers

16   again searched him outside of the City Hall chambers, threatened Plaintiff, told him to leave

17   town, and only released Plaintiff when he informed the officers that their actions were being

18   recorded by City Hall video surveillance.  (Id. at 15.)  Thereafter, the police followed Plaintiff

19   home.  (Id.)

20        As a result of the cumulative incidents described, Plaintiff claims he sustained numerous

21   injuries to his neck, back, shoulders, hand, and head, and suffered emotional and mental distress.

22   (Id.)  In the "conclusion" of the FAC, Plaintiff claims Defendants violated his Fourth Amendment

23   rights because no probable cause existed at the time of any of his arrests, none of his arrests

24   resulted in any adjudication, and Defendants' actions were based on racial discrimination because

25   _____

26   [1] It appears Plaintiff claims Hernandez made a similar false report against him on August 30, 2012.  (See id. at 14, 18.)  Plaintiff alleges that when Hernandez filed false police reports against Plaintiff on these two separate occasions,

27   they resulted in Plaintiff being searched, seized, and arrested, and sustaining physical injuries.  (Id. at 18.)  As to the August 30 report, Hernandez made a 911 call stating Plaintiff was blocking the entrance to a business; however, Plaintiff alleges that when officers arrived in response to the call, Plaintiff was more than two blocks away from the

28   business.  (Id.)

Plaintiff is African-American and a Sunni Muslim and "Plaintiff was speaking regarding attempts by the city government to erase the history of the African Americans from the city's history."  (Id. at 18–20.)  Plaintiff further claims Defendants used excessive force during the arrests, and that Defendants' actions were retaliatory.  (Id. at 19.)

**III.**

**DISCUSSION**

### A.  Statute of Limitations

The Supreme Court held that "courts considering § 1983 claims should borrow the general or residual statute [of limitations] …."  Owens v. Okure, 488 U.S. 235, 250 (1989).  The Ninth Circuit has confirmed that the residual statute of limitations to apply to § 1983 claims in California is the one-year period set forth in California Civil Procedure Code § 340(3).  Silva v. Crain, 169 F.3d 608, 610 (9th Cir. 1999).  Thus, the statute of limitations for a § 1983 claim in California is one year after the cause of action accrued.  See Foti v. Cnty. of San Mateo, 90 Fed. App'x 488, 491–92 (9th Cir. 2003).  Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  Id. at 492 (citation omitted).

Here, Plaintiff alleges a number of incidents occurring in 2012: (1) a January 15, 2012 arrest (FAC at 13–14); (2) the February 10, 2012 trespass/false inspection of Plaintiff's residence (id. at 9); (3) the February 12, 2012 illegal eviction (id. at 8–9, 16); (4) a February 20, 2012 false arrest (FAC at 10); (5) a March 2, 2012 harassment (id. at 10); (6) an April 15, 2012 use of force/arrest (id. at 16); (7) a May 5, 2012 false statements/harassment, use of force/arrest (id. at 12, 16–17); and (8) an August 30, 2012 use of force/arrest (id. at 10–12).  In a later filing, which the Court construes as an exhibit to the FAC, Plaintiff indicates multiple cases against him were dismissed from 2012 through 2015.  (ECF No. 13.)

To the extent Plaintiff alleges wrongful arrest, his exhibit to the FAC indicates Plaintiff's most recent criminal case was dismissed in January 2015.  (See id. at 1.)  Assuming Plaintiff's most recent claim accrued at the time his criminal charge was dismissed, see Cabrera v. City of Huntington Park, 159 F.3d 374, 380–81 (9th Cir. 1998), the statute of limitations tolled in January

1  2016.  However, Plaintiff did not file the instant action until February 13, 2023—several years

2  later.  Therefore, these claims are time-barred, <u>Cabrera</u>, 159 F.3d at 380–81, unless Plaintiff has

3  pled a continuing violation of his rights, <u>Knox v. Davis</u>, 260 F.3d 1009, 1013 (9th Cir. 2001).

4        In the FAC, Plaintiff alleges his claims arising from the 2012 incidents should not be

5  time-barred because they only stopped when Plaintiff left town after 2012, and resumed once

6  Plaintiff returned to Mendota in 2022.  (FAC at 18–19.)  The Court notes this argument appears

7  somewhat inconsistent with Plaintiff's prior representation to the Court that the reasons he did not

8  file a lawsuit sooner as to these claims was because he did not know he could take legal action

9  "until last year," and was unable to find an attorney.  (<u>See</u> ECF No. 1 at 9.)  Regardless, the

10  continuing violation doctrine does not appear applicable under the facts alleged.

11        A continuing violation of § 1983 can be established by pleading and proving related serial

12  violations or a pattern of discrimination against an individual that enters the limitations period.

13  <u>Green v. L.A. Cnty. Superintendent of Schs.</u>, 883 F.2d 1472, 1480 (9th Cir. 1989).  However,

14  "[t]o establish a continuing violation a plaintiff has to show a series of related acts, one or more of

15  which falls within the limitations period, or the maintenance of a discriminatory system both

16  before and during the limitations period."  <u>Id.</u> (quoting <u>Valentina v. U.S. Postal Serv.</u>, 674 F.2d

17  56, 65 (D.C. Cir. 1982) (quotations and brackets omitted)).  Discrete acts independently trigger

18  the statute of limitations.  <u>See</u> <u>Grimes v. City & Cnty. of S.F.</u>, 951 F.2d 236, 238 (9th Cir. 1991).

19  The inquiry for application of the doctrine is whether the alleged discriminatory acts are closely

20  enough related to constitute a continuing violation.  <u>Green</u>, 883 F.2d at 1480.

21        Here, Plaintiff alleges he was harassed in 2012 when certain Defendants enforced a

22  wrongful eviction, falsely arrested him, and caused him to get fired from a job; and Plaintiff

23  alleges he was harassed and falsely arrested again in 2022, after his involvement in city council

24  meetings.  However, these events do not appear related.  First, there is a gap in time of almost ten

25  years between the alleged incidents.  <u>See</u> <u>Knox</u>, 260 F.3d at 1013 (citing <u>Abramson v. Univ. of

26  Haw.</u>, 594 F.2d 202, 209 (9th Cir. 1979) ("The proper focus is upon the time of the

27  discriminatory acts, not upon the time at which the consequence of the acts became most

28  painful.")  Indeed, Plaintiff acknowledges the alleged harassment "stopped" while he was out of

1   town and did not resume until 2022.

2          Second, different defendants committed the purported acts, and no facts appear to connect

3   these defendants or suggest they worked in concert together against Plaintiff.  For example, with

4   respect to the 2012 incidents, Plaintiff suggests retaliatory harassment from officers Benitez and

5   Amador because Plaintiff had knowledge that Amador had impregnated an underage girl.  This

6   does not appear connected in any way to the Police Chief's actions in enforcing Plaintiff's

7   eviction, which occurred prior in time; nor does Plaintiff identify any reason that the Police

8   Chief's actions at that time were retaliatory or harassing.  Meanwhile, the FAC suggests Plaintiff

9   was "harassed" by officers Workinton and Renteria in 2012 because he was formerly on parole

10  (see FAC at 13–14 (use of force/arrest occurred after Plaintiff disregarded Renteria's order on

11  January 15, 2012, to put his hands on the hood of the police car, and stated "I'm not on parole

12  anymore, do you have a warrant?")); this category of harassment appears discrete and separate

13  from the other incidents alleged as well.  By contrast, Plaintiff alleges retaliation and harassment

14  stemming from his participation at city council meetings, but he did not allegedly begin attending

15  city council meetings until 2022.  See Green, 883 F.2d at 1480–81 (finding plaintiff's allegations

16  of discrimination fell into two separate categories of alleged employment discrimination:

17  harassment while the plaintiff was working prior to 1984, involving harassment from other

18  employees; and harassment occurring after that date, relating to the company's refusal to place

19  the plaintiff on medical leave and provide benefits).

20         Finally, Plaintiff generally alleges the reason for all of the wrongful acts was

21  discrimination arising from racial animus, but he does not allege any facts tying this conclusion to

22  any of the incidents.  It appears Plaintiff alleges at least some of the harassment and arrests in

23  2012 occurred after he filed several complaints against officers with the police department "and

24  city government" (see FAC at 12–13); whereas the FAC indicates the alleged harassment/

25  retaliation in 2022 occurred after Plaintiff made a presentation at a city council meeting about the

26  city government's attempts to erase the history of the African Americans from the city's history

27  (see FAC at 14–15, 19–20).  The differences in person/s involved, and alleged discriminatory

28  and/or retaliatory bases for the actions and the significant gap in time between the last discrete act

of Plaintiff's 2012 arrest, and his allegations of harassment in May, August, October, and November 2022 do not support a finding of actions that are "closely enough related to constitute a continuing violation," but appear to be separate forms of alleged discrimination. <u>Green</u>, 883 F.2d at 1480–81; <u>see also</u> <u>Nunez v. City of L.A.</u>, 147 F.3d 867, 870 (9th Cir. 1998) (affirming district court's holding that statute of limitations barred all but one of plaintiff's substantive due process claims, where plaintiff alleged discriminatory practices in promotion examinations, which he took every other year from 1985 to 1994, and the court deemed each exam date to constitute a discrete claim).

Accordingly, the Court finds Plaintiff's claims arising from actions occurring in 2012 are barred, as a matter of law, by the statute of limitations and recommends these claims be dismissed without leave to amend.  In light of its finding that Plaintiff's 2012 claims are time-barred, the Court screens the remainder of the FAC with respect to Plaintiff's claims arising out of the 2022 events.

### B.      First Amendment Liberty Clause/Pursuit of Happiness

Plaintiff characterizes his first amendment claim as violations of the liberty clause and pursuit of happiness.  (<u>See</u> FAC at 4.)  Liberally construing the FAC, however, it appears Plaintiff is referring to a First Amendment retaliation claim.[2]

"The First Amendment forbids government officials from retaliating against individuals for speaking out." <u>Blair v. Bethel Sch. Dist.</u>, 608 F.3d 540, 543 (9th Cir. 2010).  Under § 1983, retaliation by a state actor for the exercise of a constitutional right is actionable even though the action, if taken for different reasons, would have been proper. <u>Mt. Healthy City Bd. of Educ. v. Doyle (Mt. Healthy)</u>, 429 U.S. 274, 283–84 (1977); <u>Wilson v. City of Fountain Valley</u>, 372 F. Supp. 2d 1178, 1186 (C.D. Cal. 2004).  To state a claim, a plaintiff must show that he was engaged in protected conduct and that adverse action was taken against him because of that protected conduct. <u>Wilson</u>, 372 F. Supp. 2d at 1186; <u>see also</u> <u>Blair</u>, 608 F.3d at 543 (to prevail on a retaliation claim, "a plaintiff must prove: (1) he engaged in constitutionally protected activity;

---

[2] Alternatively, it is possible Plaintiff's reference to the "liberty clause" was meant to be a reference to his substantive due process rights.  The Court address any due process claim under the Fourteenth Amendment, herein.

1  (2) as a result, he was subjected to adverse action by the defendant that would chill a person of

2  ordinary firmness from continuing to engage in the protected activity; and (3) there was a

3  substantial causal relationship between the constitutionally protected activity and the adverse

4  action.").

5        Here, Plaintiff alleges he attended a city council meeting in May 2022 and made a

6  presentation, which appears to be related to "attempts by the city government to erase the history

7  of the African Americans from the city's history."  (See FAC at 14, 18–20.)  A week later,

8  Defendant Renteria and another officer questioned Plaintiff at his job, which resulted in Plaintiff

9  getting fired, and they started following Plaintiff around.  (Id. at 14.)  Similarly, Plaintiff alleges

10  he was harassed by Defendants Gonzales and the Police Chief at city council meetings, at which

11  time Plaintiff was "threaten[ed], pushed against the wall and searched for no reason … [and]

12  threat[ened] not to come to any more meetings."  (Id. at 9.)  On November 15, 2022, Plaintiff

13  alleges he was assaulted by an off-duty Mendota police officer, who struck Plaintiff in the head

14  with a baseball bat.  (Id. at 15.)  And on November 18, 2022, the date of another city council

15  meeting, Plaintiff alleges Defendant Hernandez made a false report to the police when he visited

16  City Hall for a pre-scheduled meeting to Defendant Gonzalez, and that Defendants Gonzalez,

17  Renteria, and unidentified Mendota police officers thereafter pushed Plaintiff up against a wall,

18  searched him, threatened him, and told him to leave town; later that same day, unidentified

19  officers allegedly did the same at the city council meeting and told Plaintiff not to attend any

20  more city council meetings.  (Id. at 15, 18.)

21        On these allegations, the Court finds Plaintiff has adequately pleaded First Amendment

22  violations with respect to the incidents occurring in May, August, and October 2022.  Mt.

23  Healthy, 429 U.S. at 283–84; Wilson, 372 F. Supp. 2d at 1186; Blair, 608 F.3d at 543.  On each

24  of these occasions, Plaintiff has alleged he was exercising a First Amendment right to speech at

25  the city council meetings, and thereafter received adverse treatment from the identified

26  Defendants, including actions intending to chill Plaintiff's exercise of speech by threatening

27  Plaintiff not to come to any more city council meetings and to leave town.  Further, the alleged

28  retaliatory actions are temporally linked to the dates of the city council meetings in which

1     Plaintiff participated.

2         However, Plaintiff does not state a claim against the unidentified officers.  Fed. R. Civ. P.

3   10(a).  Nor does Plaintiff state a retaliation claim against Defendant Hernandez.  Plaintiff's

4   singular allegation that Hernandez's November 18, 2022 report to the police was "false" is

5   conclusory and lacks any factual detail, and no facts are alleged to link Hernandez's call to

6   Plaintiff's protected conduct.  Similarly, Plaintiff does not state a retaliation claim against

7   Defendants Gonzalez and Renteria on November 18, 2022, because no facts show they were

8   acting in response to any protected conduct by Plaintiff.  Accordingly, these claims should be

9   dismissed for failure to state a claim.

10        **C.**     **Eighth Amendment Claims**

11         Plaintiff also claims he was subjected to cruel and unusual punishment and illegal

12   searches and seizures in violation of the Eighth Amendment.  (FAC at 5.)

13         The Eighth Amendment proscribes a freedom from cruel and unusual punishment.  U.S.

14   Const. amend. VIII; <u>see also</u> <u>Estelle</u>, 429 U.S. at 97.  The prohibition of cruel and unusual

15   punishment applies only after conviction and sentencing.  <u>Lee</u>, 250 F.3d at 686.  In general, under

16   the Eighth Amendment, "prison officials must ensure that inmates receive adequate food,

17   clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of

18   the inmates."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (internal quotations and citations

19   omitted); <u>see also</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981) ("the Eighth Amendment

20   prohibits punishments which … involve the unnecessary and wanton infliction of pain, … are

21   grossly disproportionate to the severity of the crime," or are otherwise "totally without

22   penological justification.") (citations and internal quotations omitted).

23         Here, however, Plaintiff's claims are not asserted against prison officials, but against

24   Mendota police officers and city officials, and arise from events occurring prior to Plaintiff's

25   current incarceration.  A conditions of confinement claim is therefore inapplicable to the instant

26   case.

27         Similarly, a claim of excessive force in the context of an arrest, as here, implicates the

28   Fourth Amendment right to be free from "unreasonable … seizures," not the Eighth Amendment.

U.S. Const. amend. IV; see Graham v. Connor, 490 U.S. 386, 394 (1989); see also Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) ("[b]ecause [the plaintiff] had not been convicted of a crime, but had only been arrested, his rights derive from the due process clause rather than the Eighth Amendment's protection against cruel and unusual punishment."), overruled on other grounds by Castro v. Cnty. of L.A., 833 F.3d 1060 (9th Cir. 2016).

Accordingly, Plaintiff cannot state any cognizable claim under the Eighth Amendment and such claims should be dismissed.

### D.    Fourth Amendment Search and Seizure

Plaintiff claims he was unlawfully searched and seized without legal justification or probable cause, in violation of the First, Fourth, Eighth, and Fourteenth Amendments.  (See FAC at 4–6, 9, 15, 18–20.)

As previously discussed, the Eighth Amendment is only applicable to claims raised by inmates challenging the conditions of their confinement.  Further, the Supreme Court has held that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under the standard appropriate to that specific provision …."  U.S. v. Lanier, 520 U.S. 259, 272, n.7 (1997) (citing Graham, 490 U.S. at 394); see also Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842–43 (1998) (citing Graham, 490 U.S. at 395 ("*All* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original)).  Therefore, Plaintiff fails to state a claim for false arrest/search under the First, Eighth, and Fourteenth Amendments, but the Court shall discuss Plaintiff's claims within the context of the Fourth Amendment.

"The Fourth Amendment proscribes only 'unreasonable' searches and seizures."  Franklin v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994).  The reasonableness of a search or seizure depends "not only on when [it] is made, but also how it is carried out."  Tennessee v. Garner, 471 U.S. 1, 8 (1985).  Thus, reasonableness depends upon the facts and circumstances of each case.  Harris v. U.S., 331 U.S. 145, 150 (1947).

Fourth Amendment protections extend to "brief investigatory stops of persons … that fall short of traditional arrest." U.S. v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)). Peace officers may conduct a brief, investigatory search or seizure, so long as they have a reasonable, articulable suspicion that "criminal activity may be afoot." Terry, 392 U.S. at 30. "Reasonable suspicion exists if specific, articulable facts … together with objective and reasonable inferences suggest that the persons detained by the police are engaged in criminal activity." U.S. v. Hartz, 458 F.3d 1011, 1017 (9th Cir. 2006) (internal quotation marks omitted) (alteration in original). In determining whether an officer had reasonable suspicion to conduct a stop, the Court must consider the totality of the circumstances involved in the stop. Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1496 (9th Cir. 1996). The reasonable suspicion standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." Navarette v. California, 572 U.S. 393, 397 (2014) (citation and internal quotation marks omitted).

To determine whether a search is reasonable under the Fourth Amendment, the Court balances "the need for the particular search against the invasion of personal rights that the search entails." Way v. Cnty. of Ventura, 445 F.3d 1157, 1160 (9th Cir. 2006) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). Generally, a search is reasonable if: (1) there is probable cause to conduct the search; (2) there is a warrant, or circumstances justifying a warrantless search; and (3) the procedures used to search are reasonable. Juran v. Independence Or. Cent. Sch. Dist. 13J, 898 F. Supp. 728, 731 (D. Or. 1995) (citing Schmerber v. Cal., 384 U.S. 757, 769–71 (1966)).

Here, Plaintiff alleges four incidents in 2022 in which he was unlawfully searched and seized: (1) in August 2022, Plaintiff alleges he was pushed against the wall and searched outside of the city council meeting by Gonzalez and the Police Chief (FAC at 9); (2) in October 2022, Plaintiff alleges the same incident occurred; (3) on or around November 18, 2022, Plaintiff alleges he was pushed up against a wall, searched, and threatened outside the city council meeting prior to his pre-scheduled meeting with Gonzalez by Defendants Gonzalez, Renteria, and unidentified Mendota police officers (id. at 14, 15, 18); and (4) later that same day, Plaintiff alleges he was searched and threatened a second time outside of the city hall chambers, prior to

1    the end of the city council meeting, by unidentified police officers (id. at 15).

2         Plaintiff alleges no probable cause existed to search him at any time, and that he was only

3    searched and threatened because of his involvement at the city council meetings and his attempt

4    to speak with Defendant Gonzalez during a pre-scheduled meeting.  Because Plaintiff does not

5    allege that he was arrested, informed he was under arrest, handcuffed, taken to jail, or other facts

6    consistent with a showing of arrest—but to the contrary, suggests he was only detained briefly

7    and was released after he was searched and "threatened" by the officers—the Court concludes

8    Plaintiff has alleged he was detained on these four occasions.

9         With respect to the first detainment on November 18, Plaintiff alleges Gonzalez, Renteria,

10   and unidentified Mendota police officers searched and seized him in response to a "false report"

11   from Hernandez.  However, Plaintiff does not allege any facts showing that Gonzalez, Renteria,

12   and the unidentified Mendota police officers had actual knowledge or reason to believe that

13   Hernandez's call to the police was "false."   On this record, therefore, the call to the police

14   constitutes a reasonable, articulable suspicion sufficient to conduct a brief, investigatory stop.

15   Terry, 392 U.S. at 30; Hartz, 458 F.3d at 1017.  On this same basis, the brief search incident to

16   the stop was also reasonable.  As to the second encounter on November 18, Plaintiff's claim

17   against unidentified officers, again, fails.

18        As to the August and October 2022 incidents, however, there is no showing that any

19   reasonable basis existed to detain and search Plaintiff on those occasions.  Thus, viewing the

20   allegations as true and construing all inferences in the light most favorable to Plaintiff, Plaintiff

21   has alleged sufficient facts showing he was unlawfully detained and searched on those dates.

22       **E.**    **Fourth Amendment Excessive Force**

23        The use of excessive force by law enforcement officers in effectuating an arrest states a

24   valid claim under § 1983.  See Rutherford v. City of Berkeley, 780 F.2d 1444, 1447 (9th Cir.

25   1986).  To state a claim for imposition of excessive force, Plaintiff must allege facts showing that

26   he (1) suffered some injury which (2) resulted from force that was clearly excessive to the need

27   for force; (3) the excessiveness of which was objectively unreasonable.  See Heitschmidt v. City

28   of Houston, 161 F.3d 834, 839 (5th Cir. 1998).

An excessive force claim is analyzed under the Fourth Amendment's "objective reasonableness" standard.  Graham, 490 U.S. at 388.  The Ninth Circuit has articulated a three-step analysis to evaluate excessive force claims under the framework set forth by the Supreme Court in Graham v. Connor.  See Thompson v. Rahr, 885 F.3d 582, 586 (9th Cir. 2018) (citing Espinosa v. City & Cnty. of S.F., 598 F.3d 528, 537 (9th Cir. 2010)).  First, the Court must assess "the severity of the intrusion" "by considering 'the type and amount of force inflicted.'"  Id.  Second, the Court must evaluate the government's interest "by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape."  Espinosa, 598 F.3d at 537 (quoting Graham, 490 U.S. at 396).  Third, the Court must balance "the gravity of the intrusion on the individual against the government's need for that intrusion … to determine whether the force used was 'greater than is reasonable under the circumstances.'"  Id. (citing Santos v. Gates, 287 F.3d 846, 854 (9th Cir. 2002)).

Because reasonableness "is not capable of precise definition or mechanical application," the inquiry requires "attention to the facts and circumstances of each particular case."  Graham, 490 U.S. at 396.  Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id.  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. Id. (citing Johnson v. Glick, 481 F. 2d 1028, 1033 (2nd Cir. 1973)).  Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  Id. at 396–97; see also Ames v. King Cnty., 846 F.3d 340, 348 (9th Cir. 2017).  Determination of reasonableness therefore requires consideration of the totality of the circumstances.  Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011).  Consequently, courts consider other factors, such as the availability of alternative methods of capturing or detaining the suspect in determining reasonableness.  Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994), cert. denied, 513 U.S. 1148 (1995).

Again, the identified incidents relevant to the excessive force inquiry are the four

search/seizure incidents occurring in August and October 2022 and on November 18, 2022. (FAC at 9, 14, 15, 18.)

In each encounter, Plaintiff alleges he was pushed against a wall and "threatened" when he was detained and searched. The FAC does not assert facts showing Plaintiff acted in any way to justify the use of force during these encounters. Even with respect to the first November 18, 2022 encounter, in which officers allegedly approached Plaintiff in response to Hernandez's 911 call, the FAC contains no facts showing Plaintiff resisted the officers or presented any danger necessitating the officers to push Plaintiff into a wall. With respect to the other incidents, Plaintiff alleges he was detained by the officers because of his participation at the city council meetings. Plaintiff alleges he was pushed against the wall for no reason and threatened not to come to any more city council meetings. Further, as a result of the cumulative incidents described, Plaintiff claims he sustained numerous injuries to his neck, back, shoulders, hand, and head, and suffered emotional and mental distress. (Id. at 15.)

While the Court notes a plaintiff's general allegations that he was "being harassed" are insufficient to state a constitutional deprivation under § 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (discussing verbal harassment and collecting cases), Plaintiff's allegations that he was pushed against a wall despite no provocation is sufficient to show Defendants' actions were not reasonable under the circumstances. Thus, Plaintiff has alleged sufficient facts to state a claim under the Fourth Amendment for excessive force with respect to the search and seizure incidents occurring in August and October 2022, and the first search and seizure incident occurring on November 18, 2022. Plaintiff does not assert a cognizable claim with respect to the second search and seizure incident on November 18, as he does not identify any of the individuals who purportedly participated in that event and they are not named Defendants in the instant action.

## F.    Fourteenth Amendment Equal Protection

As noted, the "conclusion" of the FAC asserts Defendants' actions were based on racial discrimination because Plaintiff is African-American and a Sunni Muslim. (FAC at 18–20.) However, the Court finds Plaintiff has not alleged sufficient facts to state a cognizable claim of

19

1   racial discrimination and/or harassment in violation of the Fourteenth Amendment.

2       The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall

3   ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.,

4   amend. XIV, § 1.  This "is essentially a direction that all similarly situated persons should be

5   treated alike." City of Cleburne v. Cleburne Living Ctr. (Cleburne), 473 U.S. 432, 439 (1985).

6       An equal protection claim may be established by showing that a defendant intentionally

7   discriminated against Plaintiff based on his membership in a protected class, Hartmann v. Cal.

8   Dept. of Corrs. and Rehab., 707 F.3d at 1123, or that similarly situated individuals were

9   intentionally treated differently without a rational relationship to a legitimate state purpose,

10  Engquist v. Or. Dept. of Agric., 553 U.S. 591, 601–02 (2008).  See also Vill. of Willowbrook v.

11  Olech, 528 U.S. 562, 564 (2000) (discussing "class-of-one" equal protection claims); Lazy Y

12  Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); N. Pacifica LLC v. City of Pacifica,

13  526 F.3d 478, 486 (9th Cir. 2008).

14      Here, Plaintiff does allege incidents in which he was harassed by various Defendants

15  following his attendance at city council meetings.  Plaintiff also indicates he gave a presentation

16  at a city council meeting about the alleged attempts by the city government to "erase the history

17  of the African Americans from the city's history."  (FAC at 18–20.)  Thus, Plaintiff concludes

18  Defendants discriminated against him because he is African-American.  (Id.)  While these

19  allegations may appear consistent with racial discrimination, the Court cannot conclude at this

20  juncture that Plaintiff has provided non-conclusory, factual allegations sufficient to "nudge[] his

21  claims of … discrimination across the line from conceivable to plausible," as required under Rule

22  8.  Iqbal, 556 U.S. at 680 (citation omitted).  The circumstances concerning Plaintiff's

23  presentation at city hall are unclear.  Plaintiff does not allege facts about Defendants' involvement

24  in and knowledge of the city council meetings.  Nor does Plaintiff allege facts that any of the

25  officer defendants who participated in the 2022 searches and seizures occurring after the city

26  council meetings treated African Americans differently than other subclasses of people with

27  heightened susceptibility, treated Plaintiff differently than any other similarly-situated individual,

28  or acted with an intent or purpose to discriminate against Plaintiff based upon membership in a

protected class.  See Cleburne, 473 U.S. at 439; see also Thornton v. City of St. Helens, 425 F.3d 1158, 1166–67 (9th Cir. 2005); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).  The Court previously indicated leave to amend would be appropriate as to this claim.  However, rather than file an amended complaint, Plaintiff elected to notify the Court of his willingness to proceed on the claims previously found to be cognizable.  (ECF No. 15.)   Accordingly, the Court recommends dismissal of any equal protection cause of action for failure to allege facts sufficient to state a cognizable claim.

## IV.

### ORDER AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY ORDERED that the Clerk of the Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that:

1.   All of Plaintiff's claims arising from incidents occurring in 2012 be dismissed, without leave to amend, as barred by the applicable statutes of limitations;

2.   This action proceed on the following claims asserted in the first amended complaint (ECF No. 12):

   a)   First Amendment retaliation claims against Defendant Renteria for questioning Plaintiff at his job and following him around in May 2022; and against Defendants Gonzalez and the Police Chief for their alleged harassment, search, and detainment of Plaintiff in August and October 2022;

   b)   Fourth Amendment claims for unreasonable search and seizure against Defendants Gonzalez and the Police Chief in August 2022 and October 2022; and

   c)   Fourth Amendment claims for excessive use of force against Defendants Gonzalez and the Police Chief for their actions in August 2022 and October 2022; and against Defendants Gonzalez and Renteria for their actions on or around November 18, 2022; and

1        3.      All other potential claims be dismissed for failure to state a claim.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, Plaintiff may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 15, 2023**

UNITED STATES MAGISTRATE JUDGE

22