# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN KARL RAY BUNTON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MENDOTA POLICE CHIEF, et al.,<br><br>Defendants. | Case No. 1:23-cv-00211-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND ONE DEFENDANT<br><br>ORDER DIRECTING CLERK TO FILE PLAINTIFF'S LODGED SECOND AMENDED COMPLAINT<br><br>(ECF No. 23)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.

## BACKGROUND

Plaintiff Benjamin Karl Ray Bunton ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, initiated this civil rights action pursuant to 42 U.S.C. § 1983 on February 13, 2023.[1] (ECF No. 1.) The Court screened the complaint, determined it did not state a cognizable claim, and directed Plaintiff to file an amended complaint. (ECF No. 9.) On March 27, 2023, Plaintiff

---

[1] At the time he initiated this action, Plaintiff was incarcerated at the Montana State Prison in Deer Lodge, Montana. Based on a notice of change of address filed by Plaintiff with the Court on November 30, 2023, it appears Plaintiff is no longer incarcerated at the Montana State Prison. (ECF No. 30.) The allegations that are the subject of the instant complaint occurred in the City of Mendota, prior to his incarceration in Montana.

1

filed a first amended complaint ("FAC").  (ECF No. 12.)  The FAC was screened and found to state cognizable claims under the First and Fourth Amendments.  (ECF No. 14.)  Plaintiff was ordered to file either a second amended complaint or notice of intent to proceed on the cognizable claims within thirty days.  (Id. at 22.)  On June 12, 2023, Plaintiff filed a notice stating that he wished to proceed on the cognizable claims.  (ECF No. 15.)  On June 16, 2023, this Court issued findings and recommendations that this action proceed on Plaintiff's First and Fourth Amendment claims against three Defendants—(1) Mendota Police Officer Renteria ("Renteria"), (2) Building Inspector/City Manager Christian Gonzalez ("Gonzalez"), and (3) the City of Mendota Chief of Police ("Police Chief")—which were adopted by the District Judge on July 13, 2023.  (ECF Nos. 17, 18.)

On August 18, 2023, Plaintiff filed a "Motion to Add Two Additional Defendants" (ECF No. 19), which the Court construed as a motion to amend Plaintiff's first amended complaint (ECF No. 20).  On September 1, 2023, the Court granted Plaintiff's motion to amend, but ordered Plaintiff to file a second amended complaint that contained all applicable allegations against all identified defendants in a single filing, in compliance with the Local Rules, before it would order service to be completed on the identifiable defendants.  The Court granted thirty (30) days to file a second amended complaint.  (ECF No. 20.)  However, on September 11, 2023, Plaintiff filed a notice of request to proceed on cognizable claims in the first amended complaint.  (ECF No. 21.)  Plaintiff's filing noted that while his request to add defendants was logical, for Plaintiff to file a second amended complaint adding such defendants would only cause more delay in this case.  Plaintiff concluded the filing by stating he "request[s] to stand on his first amended complaint."  (ECF No. 21 at 1.)

Given Plaintiff's request to proceed on the first amended complaint in relation to the Court's previous instruction concerning Plaintiff's ability to conduct discovery to ascertain the identities of the Doe Defendants, the Court issued an order on September 13, 2023 authorizing service of the first amended complaint on Defendants Renteria, Gonzalez, and Police Chief pursuant to Plaintiff's request.  (ECF No. 22.)

However, on September 15, 2023—four days after submitting to this Court that he

"request[ed] to stand on his first amended complaint" and two days after the Court issued an order authorizing service—Plaintiff lodged a second amended complaint (ECF No. 23). Despite already ordering service due to Plaintiff's request to proceed on the first amended complaint, the Court liberally construed Plaintiff's timely lodging of the second amended complaint to mean Defendant no longer "request[ed] to stand on his first amended complaint" and intended that the Court screen his second amended complaint as to Doe defendants.

In the interim, Plaintiff filed a motion to compel Defendants to produce the identities of the unknown Mendota police officers, or, in the alternative, motion for default judgment on September 22, 2023. (ECF No. 24.) On September 26, 2023, the Court denied Plaintiff's motion for lack of jurisdiction given no Defendant had been served. Despite lodging the second amended complaint on September 15, 2023, Plaintiff filed a notice of submitting service documents, "in compliance with the Court's order filed September 13, 2023." (ECF No. 25.) On November 27, 2023, Plaintiff also filed a motion for sanctions against Defendants for failing to answer the second amended complaint. No Defendant has been served, pending the Court's screening of Plaintiff's second amended complaint.

## II.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The standard under Federal Rule of Civil Procedure 8 does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly (Twombly), 550 U.S. 544, 555 (2007)

(internal quotation marks omitted)). Thus, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (citations omitted).

A document filed *pro se*, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (on civil rights actions filed by *pro se* prisoners, pleadings should be liberally construed with any doubt resolved in the *pro se* prisoner's favor). Nevertheless, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings, it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Federal Rules of Civil Procedure 8, 10, and 12. Rather, as both the Supreme Court and Ninth Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10, and 12 are procedural rules that even *pro se* civil litigants must follow. See McNeil v. U.S., 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (holding *pro se* litigants are held to same procedural rules as litigants with counsel).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678–79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). As for the nature of what is "facially plausible," the Supreme Court explained that "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the

4

mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." Iqbal, 556 U.S. at 679. Thus, the "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

As a general rule, the Court must limit its review to the operative complaint and may not consider facts presented in extrinsic evidence. See Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). Materials submitted as part of the complaint, however, are not "outside" the complaint and may be considered. Id.; Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). Moreover, the Court is not required to accept as true conclusory allegations which are contradicted by exhibits to the complaint. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295–96 (9th Cir. 1998). A plaintiff can also "plead himself out of a claim by including unnecessary details contrary to his claims." Sprewell, 266 F.3d at 988. Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

## II.

## SECOND AMENDED COMPLAINT ALLEGATIONS

The actions that are the subject of Plaintiff's second amended complaint (SAC) occurred in the City of Mendota. (ECF No. 23 at 2.) The SAC purports to assert causes of action for (1) violations of freedom of speech, search and seizure, excessive force and (2) violations of freedom of expression, liberty, freedom from retaliation, and harassment against the Police Chief; Gonzalez; and Mendota Police Officers Renteria, "John Doe #1," and "John Doe #2." (Id. at 2-4.)

The Court accepts Plaintiff's allegations in the SAC as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915. Plaintiff alleges that in May 2022 and November 2022, he encountered Officer Renteria and an unidentified Mendota police officer

while he was waiting for his employer. (SAC 6.) Plaintiff alleges Officer Renteria stated Plaintiff "should leave town, that there was nothing but trouble for [Plaintiff]." (Id.) Plaintiff further alleges that Defendant Renteria made comments in front of Plaintiff's employer, which resulted in Plaintiff's termination from both jobs. (Id. at 6, 8.) Plaintiff claims Defendant Renteria subsequently would "follow [Plaintiff] around town in an attempt to intimidate [him]." (Id. at 6.)

Plaintiff further alleges that after attending city council meetings in August and October 2022 wherein he addressed "city officials['] attempts at [erasing] the African-American history from the city's records," Defendant Gonzalez and unidentified police harassed and searched Plaintiff. (Id.) Plaintiff claims he was the only person searched before entering the city council meetings. (Id.) Plaintiff alleges he was pushed against the wall outside council chambers and was searched again at the end of one of the city council meetings.[2] (Id.) During the post-meeting search, Plaintiff alleges he was handcuffed, pushed onto the front of a police vehicle, and was threatened not to return to future meetings. (Id.) Plaintiff claims that officers held him down and twisted his arm, which resulted in injuries to his lower back, right elbow, and shoulder. (Id.)

On November 15, 2022, Plaintiff alleges he was assaulted by an unnamed off-duty police officer, who struck Plaintiff in the head with a baseball bat and told Plaintiff he "should just leave town, it's only going to get worse." (Id. at 7.) Plaintiff alleges attempts were made to report the assault to the police department, "to no avail." (Id.)

On or around November 18, 2022, Plaintiff alleges he had a scheduled meeting with Defendant Gonzalez "to discuss the incidents with the police." (Id.) Plaintiff claims that upon arriving, "the City Clerk Hernandez" called the police. (Id.) Plaintiff alleges that Defendants Renteria, Gonzalez, and an unidentified officer took Plaintiff outside, pushed him up against a wall, and searched and threatened him. (Id.) Plaintiff claims that when he informed Defendant Renteria, Defendant Gonzalez, and the unidentified officer that their actions were being recorded by video cameras outside the City Hall building, they became upset and began to follow Plaintiff

---

[2] Plaintiff alleges he was "searched again at the end of the meeting." (Id. at 6.) However, Plaintiff does not specify whether the search occurred after the August 2022 city council meeting or the October 2022 city council meeting.

6

home. (Id.)

Plaintiff claims no probable cause existed during any of these incidents. (Id.) Plaintiff further alleges that "no one working under the official capacity attempted to intercede, but instead joined in these illegal acts." (Id.)

At the conclusion of his complaint, Plaintiff summarizes his claims against five defendants. First, Plaintiff alleges the Police Chief harassed, threatened, and ordered the illegal searches of Plaintiff and Plaintiff suffered fear of use of excessive force and bodily injury as a result. (Id. at 8.) Second, Plaintiff alleges Defendant Gonzalez harassed, threatened, and took part in illegal searches, failed to intercede in illegal actions, withheld and/or destroyed evidence. Plaintiff alleges he suffered fear, intimidation, and bodily injury as a result of Defendant Gonzalez's actions. Third, Plaintiff alleges officer Renteria harassed, threatened, and intimidated Plaintiff and caused Plaintiff to lose two jobs by harassing Plaintiff at job sites. Plaintiff also alleges he suffered fear of bodily injury as a result of Defendant Renteria's actions. Fourth, Plaintiff alleges "Mendota Police Officer (John Doe #1)" pushed Plaintiff against the wall, participated in illegal searches, failed to intercede in illegal actions, used excessive force, and harassed and threatened Plaintiff. Plaintiff alleges he suffered bodily injuries, including injuries to his right shoulder and elbow, as a result of Defendant Mendota Police Officer John Doe #1's actions. Fifth, Plaintiff alleges "Mendota Police Officer (John Doe #[2])" handcuffed Plaintiff, pushed Plaintiff against a police vehicle, failed to intercede, used excessive force, and harassed and threatened Plaintiff. Plaintiff alleges he suffered bodily injuries, including injury to his lower back and neck, as a result of Defendant Mendota Police Officer John Doe #2's actions. Plaintiff also provides physical descriptions of Mendota Police Officer John Doe #1 and #2.

### III.

### DISCUSSION

**A.    Plaintiff's Causes of Action for Violation of the Fourth Amendment**

Plaintiff alleges his first cause of action is for "Freedom of Speech, Search and Seizure, and Excessive Force." (Id. at 3.) The Court analyzes Plaintiff's freedom of speech claim under his alleged cause of action for "freedom of expression," which the Court liberally construes as a

7

First Amendment retaliation claim. The Court first addresses Plaintiff's search and seizure and excessive force claims separately.

### 1. Fourth Amendment Search and Seizure

Plaintiff claims he was unlawfully searched and seized without legal justification or probable cause. (See SAC at 3, 6-8.) The Supreme Court has held that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under the standard appropriate to that specific provision …." U.S. v. Lanier, 520 U.S. 259, 272, n.7 (1997) (citing Graham, 490 U.S. at 394); see also Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842–43 (1998) (citing Graham, 490 U.S. at 395 ("*All* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original)). Therefore, the Court shall discuss Plaintiff's claims within the context of the Fourth Amendment.

"The Fourth Amendment proscribes only 'unreasonable' searches and seizures." Franklin v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994). The reasonableness of a search or seizure depends "not only on when [it] is made, but also how it is carried out." Tennessee v. Garner, 471 U.S. 1, 8 (1985). Thus, reasonableness depends upon the facts and circumstances of each case. Harris v. U.S., 331 U.S. 145, 150 (1947). Fourth Amendment protections extend to "brief investigatory stops of persons … that fall short of traditional arrest." U.S. v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)). Peace officers may conduct a brief, investigatory search or seizure, so long as they have a reasonable, articulable suspicion that "criminal activity may be afoot." Terry, 392 U.S. at 30. "Reasonable suspicion exists if specific, articulable facts … together with objective and reasonable inferences suggest that the persons detained by the police are engaged in criminal activity." U.S. v. Hartz, 458 F.3d 1011, 1017 (9th Cir. 2006) (internal quotation marks omitted) (alteration in original). In determining whether an officer had reasonable suspicion to conduct a stop, the Court must consider the totality of the circumstances involved in the stop. Easyriders Freedom F.I.G.H.T. v. Hannigan, 92 F.3d 1486, 1496 (9th Cir.

1996). The reasonable suspicion standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." Navarette v. California, 572 U.S. 393, 397 (2014) (citation and internal quotation marks omitted).

To determine whether a search is reasonable under the Fourth Amendment, the Court balances "the need for the particular search against the invasion of personal rights that the search entails." Way v. Cnty. of Ventura, 445 F.3d 1157, 1160 (9th Cir. 2006) (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979)). Generally, a search is reasonable if: (1) there is probable cause to conduct the search; (2) there is a warrant, or circumstances justifying a warrantless search; and (3) the procedures used to search are reasonable. Juran v. Independence Or. Cent. Sch. Dist. 13J, 898 F. Supp. 728, 731 (D. Or. 1995) (citing Schmerber v. Cal., 384 U.S. 757, 769–71 (1966)).

Here, Plaintiff alleges four incidents in 2022 wherein he was unlawfully searched and seized: (1) in two incidents before entering city council meetings in August 2022 and October 2022, Plaintiff alleges he was pushed up against the wall and searched by two unknown police officers on the orders of Defendant Gonzalez and police; (2) in either August 2022 or October 2022, Plaintiff alleges he was searched again at the conclusion of the city council meeting wherein he was handcuffed, pushed onto the front of the police vehicle, threatened, and held down by two officers; and (3) on or around November 18, 2022, Plaintiff alleges he was pushed up against a wall, searched, and threatened outside the city hall building by Defendants Gonzalez, Renteria, and an unidentified Mendota police officer. (SAC at 6-7.)

Plaintiff alleges no probable cause existed to search him at any time. (Id. at 7.) Because Plaintiff does not allege that he was arrested, informed he was under arrest, taken to jail, or other facts consistent with a showing of arrest—but to the contrary, suggests he was only detained briefly and was released after he was searched and threatened by the officers—the Court concludes Plaintiff has alleged he was detained on these four occasions.

With respect to the detainment on November 18, 2023, Plaintiff alleges Gonzalez, Renteria, and an unidentified Mendota police officer searched and seized Plaintiff in response to "the city clerk Hernandez" calling the police. (Id. at 8.) On these allegations, the city clerk's call to the police constitutes a basis for a reasonable, articulable suspicion sufficient to conduct a

9

1  brief, investigatory stop. Terry, 392 U.S. at 30; Hartz, 458 F.3d at 1017.  On this same basis, the
2  brief search incident to the stop was also reasonable.  Thus, as alleged, Plaintiff's encounter with
3  Gonzalez, Renteria and the unidentified officer on November 18, 2022 fails as an unreasonable
4  search and seizure on these facts.  Because Defendant Renteria was not involved in any of the
5  other alleged unreasonable searches, the Court recommends dismissing Plaintiff's claim for
6  unreasonable search and seizure against Defendant Renteria.

7        The Court also finds that Plaintiff's unreasonable search and seizure claim against the
8  Police Chief in his second amended complaint fails.  The Police Chief is not mentioned anywhere
9  in Plaintiff's factual allegations.  Rather, Plaintiff alleges a singular conclusory allegation at the
10  conclusion of his complaint that the Police Chief "ordered' the alleged illegal searches of
11  Plaintiff.  Plaintiff's complaint is devoid of any facts alleging that the Police Chief "ordered" any
12  or each of the four alleged "illegal searches."  The Court therefore cannot reasonably infer that
13  the Police Chief is liable for any of the alleged unreasonable searches.  See Iqbal, 556 U.S. at
14  678–79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  Further, the Court notes
15  Plaintiff's allegation that "no one working under the official capacity [of the Mendota Police]
16  attempted to intercede, but instead joined in these illegal acts." (Id. at 7.)  However, Plaintiff fails
17  to allege any facts linking the Police Chief to "join[ing]," nonetheless "order[ing]," any of the
18  alleged unlawful searches.  "Threadbare recitals of the elements of a cause of action, supported by
19  mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  Accordingly, the Court
20  recommends dismissing Plaintiff's claim for unlawful search and seizure in violation of the
21  Fourth Amendment against the Police Chief.  However, the Court notes it previously found that
22  Plaintiff stated a cognizable Fourth Amendment claim for unreasonable search and seizure
23  against the Police Chief for the August and October 2022 incidents because Plaintiff included
24  factual allegations regarding the Police Chief's actions in his FAC.  (See ECF No. 18 at 2.)  The
25  Court liberally construes Plaintiff's conclusory statement relating to the Police Chief in his SAC
26  as an intention to maintain his cognizable claims against the Police Chief.  Accordingly, the Court
27  recommends granting Plaintiff leave to amend his second amended complaint limited to curing
28

the factual deficiencies related to his claims against the Police Chief.[3]

As to the three incidents alleged in August and October 2022 prior to and at the conclusion of city council meetings, there is no showing that any reasonable basis existed to detain and search Plaintiff on any of those three occasions. Thus, viewing the allegations as true and construing all inferences in the light most favorable to Plaintiff, Plaintiff has alleged sufficient facts showing he was unlawfully detained and searched by Defendants Gonzalez and unidentified Mendota police officers in August and October 2022.

### 2. Fourth Amendment Excessive Force

The use of excessive force by law enforcement officers in effectuating an arrest states a valid claim under § 1983. See Rutherford v. City of Berkeley, 780 F.2d 1444, 1447 (9th Cir. 1986). To state a claim for imposition of excessive force, Plaintiff must allege facts showing that he (1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable. See Heitschmidt v. City of Houston, 161 F.3d 834, 839 (5th Cir. 1998).

An excessive force claim is analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham, 490 U.S. at 388. The Ninth Circuit has articulated a three-step analysis to evaluate excessive force claims under the framework set forth by the Supreme Court in Graham v. Connor. See Thompson v. Rahr, 885 F.3d 582, 586 (9th Cir. 2018) (citing Espinosa v. City & Cnty. of S.F., 598 F.3d 528, 537 (9th Cir. 2010)). First, the Court must assess "the severity of the intrusion" "by considering 'the type and amount of force inflicted.'" Id. Second, the Court must evaluate the government's interest "by assessing (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the officers' or public's safety; and (3) whether the suspect was resisting arrest or attempting to escape." Espinosa, 598 F.3d at 537 (quoting Graham, 490 U.S. at 396). Third, the Court must balance "the gravity of the intrusion on the individual against the government's need for that intrusion … to determine whether the force used was 'greater than is reasonable under the circumstances.'" Id. (citing Santos v. Gates, 287

---

[3] Plaintiff is again reminded that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012). This means an amended complaint must be "complete in itself without reference to the prior or superseded pleading." E.D. Cal. L.R. 220.

1 F.3d 846, 854 (9th Cir. 2002)).

2  Because reasonableness "is not capable of precise definition or mechanical application," the inquiry requires "attention to the facts and circumstances of each particular case." Graham, 490 U.S. at 396. Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. Id. (citing Johnson v. Glick, 481 F. 2d 1028, 1033 (2nd Cir. 1973)). Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396–97; see also Ames v. King Cnty., 846 F.3d 340, 348 (9th Cir. 2017). Determination of reasonableness therefore requires consideration of the totality of the circumstances. Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011). Consequently, courts consider other factors, such as the availability of alternative methods of capturing or detaining the suspect in determining reasonableness. Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994), cert. denied, 513 U.S. 1148 (1995).

Here, the identified incidents relevant to the excessive force inquiry are the same four search and seizure incidents occurring in August and October 2022 and on November 18, 2022. (SAC at 6-7.) Specifically, Plaintiff alleges he was pushed up against a wall in both incidents prior to the city council meetings in August 2022 and October 2022 as well as the November 18, 2022 incident outside the city hall building. (SAC at 6.) In the incident following the conclusion of either the August 2022 or October 2022 city council meeting, Plaintiff alleges he was "handcuffed and pushed onto the front of the police vehicle at which time [Plaintiff] was threatened…." (Id.) The SAC does not assert facts showing Plaintiff acted in any way to justify the Defendants' use of force during these encounters. Even with respect to the November 18, 2022 encounter, in which Defendants Renteria and Gonzalez and an unknown police officer allegedly approached Plaintiff in response to a third party's call to the police, the SAC contains no facts showing Plaintiff resisted the officers or presented any danger necessitating the officers to push Plaintiff against a wall. As a result of the cumulative incidents described, Plaintiff claims

he sustained numerous injuries, including injuries to his back, right shoulder, right elbow, and neck, and suffered emotional distress. (Id. at 6, 8.)

Accordingly, Plaintiff's allegations that he was pushed against walls and a police vehicle despite no provocation is sufficient to show Defendants' actions were not reasonable under the circumstances. Thus, Plaintiff has alleged sufficient facts to state a claim under the Fourth Amendment for excessive force with respect to the three search and seizure incidents occurring in August and October 2022 against Defendants Gonzalez and unidentified Mendota police officers and the incident occurring on November 18, 2022 against Defendants Renteria, Gonzalez, and unidentified Mendota police officers.

In his second amended complaint, Plaintiff also generally alleges he suffered "fear of use of excessive force" as a result of the Police Chief's actions. (Id. at 8.) However, Plaintiff alleges no facts regarding any alleged excessive use of force by the Police Chief in his SAC. The Court notes it previously found that Plaintiff stated cognizable Fourth Amendment claims for excessive use of force against the Police Chief for the August and October 2022 incidents because Plaintiff included factual allegations regarding the Police Chief's actions in his FAC. (See ECF No. 18 at 2.) The Court liberally construes Plaintiff's conclusory statement relating to the Police Chief in his SAC as an intention to maintain his cognizable claims against the Police Chief. Accordingly, the Court recommends granting Plaintiff leave to amend his second amended complaint limited to curing the factual deficiencies related to his claims against the Police Chief.

**B.    Plaintiff's Cause of Action for Violation of the First Amendment**

Plaintiff characterizes his second cause of action as violations of his "freedom of expression, liberty, [and] freedom from retaliation, harassment." (SAC at 4.) Liberally construing the SAC, it appears Plaintiff is referring to a First Amendment retaliation claim.

"The First Amendment forbids government officials from retaliating against individuals for speaking out." Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010). Under § 1983, retaliation by a state actor for the exercise of a constitutional right is actionable even though the action, if taken for different reasons, would have been proper. Mt. Healthy City Bd. of Educ. v. Doyle (Mt. Healthy), 429 U.S. 274, 283–84 (1977); Wilson v. City of Fountain Valley, 372 F.

13

Supp. 2d 1178, 1186 (C.D. Cal. 2004). To state a claim, a plaintiff must show that he was engaged in protected conduct and that adverse action was taken against him because of that protected conduct. Wilson, 372 F. Supp. 2d at 1186; see also Blair, 608 F.3d at 543 (to prevail on a retaliation claim, "a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.").

Here, Plaintiff alleges he attended two city council meetings in August 2022 and October 2022 "to address the city council regarding city officials['] attempts at [erasing] the African-American history from the city's records." (See SAC at 6.) Liberally construing the SAC, it appears Plaintiff alleges six incidents occurred as a result of his attendance at the two public city council meetings to address public officials. First, Plaintiff alleges he was the only individual searched prior to both city council meetings in August 2022 and October 2022. The third incident occurred following one of the city council meetings, wherein "[Defendant Gonzalez] and police began to harass the Plaintiff and ordered two (2) unknown police officers to search the Plaintiff." (Id.) Plaintiff alleges he was searched, pushed up against a wall, and "threatened not to return to future meetings." (Id.) Such actions can be liberally construed as an attempt to chill Plaintiff from attending or "address[ing] the city council." (Id.)

The SAC also alleges that in November 2022, after Plaintiff attended the city council meetings, Defendant Renteria and another unknown officer "harass[ed]" Plaintiff at his job and made comments in front of Plaintiff's employer which resulted in Plaintiff's termination. (Id.) Plaintiff further alleges Defendant Renteria would follow plaintiff around town "in an attempt to intimidate" Plaintiff. (Id.) The fifth incident allegedly occurred on November 15, 2022, wherein Plaintiff was assaulted by an unidentified off-duty Mendota police officer, who struck Plaintiff in the head with a baseball bat and told Plaintiff that he should "leave town, it's only going to get worse." (Id. at 7.) Further, on November 18, 2022, Plaintiff alleges "city clerk Hernandez" called the police when Plaintiff visited City Hall for a scheduled meeting with Defendant

14

Gonzalez "to address the incidents with the police." (Id.)  Plaintiff alleges Defendants Gonzalez, Renteria, and unidentified Mendota police officers thereafter pushed Plaintiff up against a wall, searched him, threatened him, and followed him home.  (Id.)

The Court finds Plaintiff has adequately pleaded First Amendment violations as to the first five incidents.  Mt. Healthy, 429 U.S. at 283–84; Wilson, 372 F. Supp. 2d at 1186; Blair, 608 F.3d at 543.  On each of these occasions, Plaintiff has alleged he was exercising a First Amendment right to speech at the city council meetings, and thereafter received adverse treatment from Defendants Renteria, Gonzalez, and unidentified Mendota police officers, including actions intending to chill Plaintiff's exercise of speech by unprovoked searches and seizures, following Plaintiff around town to intimidate him, and threatening Plaintiff "not to return to future meetings" and to leave town, it's only going to get worse." (Id. 6-8.)  Further, a liberal construction of the alleged retaliatory actions hints they are temporally linked to the dates of the city council meetings in which Plaintiff addressed the city council.

However, the Court finds Plaintiff fails to state a retaliation claim against Defendants Gonzalez and Renteria during the sixth incident on November 18, 2022 because no facts show they were acting in response to any protected conduct by Plaintiff.  Further, as alleged, a third party called the police for unknown reasons.  Plaintiff therefore fails to allege a substantial causal relationship between a constitutionally protected activity and Gonzalez and Renteria's actions.

Additionally, the alleged May 2022 incident wherein Defendant Renteria and another unidentified officer harassed Plaintiff at his job occurred prior to Plaintiff's attendance at the August 2022 and October 2022 city council meetings.  Accordingly, the Court finds Plaintiff fails to allege a substantial causal relationship between a constitutionally protected activity and Defendant Renteria and the unidentified officer approaching Plaintiff at his job.

The Court also finds Plaintiff fails to state a retaliation claim against the Police Chief, as the SAC is devoid of any facts supporting the singular general allegation that the Police Chief "harassed" and "threatened" Plaintiff.  (ECF No. 8.)  However, the Court notes it previously found that Plaintiff stated a cognizable First Amendment retaliation claim against the Police Chief for the August and October 2022 incidents because Plaintiff included factual allegations

regarding the Police Chief's actions in his FAC. (See ECF No. 18 at 2.) The Court liberally construes Plaintiff's conclusory statement relating to the Police Chief in his SAC as an intention to maintain his cognizable claims against the Police Chief. Accordingly, the Court recommends granting Plaintiff leave to amend his second amended complaint limited to curing the factual deficiencies related to his claims against the Police Chief.

Accordingly, the Court recommends (1) dismissing Plaintiff's retaliation claim against the Police Chief; (2) his retaliation claim as to the May 2022 incident against Defendant Renteria and the unidentified officer; and (3) the November 18, 2022 incident against Defendants Gonzalez and Renteria. Viewing the allegations as true and construing all inferences in the light most favorable to Plaintiff, the Court recommends proceeding on Plaintiff's remaining First Amendment retaliation claim.

### C. Doe Defendants

The use of "John Doe" to identify a defendant is generally not favored. Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, in certain situations where the identity of alleged defendants is not known prior to the filing of a complaint, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." Id.

Here, the Court determines that there is a potential that discovery would uncover the identities of the "John Doe" police officers described by Plaintiff in the SAC. However, as the Court noted in its order granting leave to amend (ECF No. 20 at 4) and repeated in its order authorizing service (ECF No. 22 at 3), the Court cannot order service of a Doe defendant because the United States Marshal cannot serve a Doe defendant. Therefore, before the Court orders the United States Marshal to serve a Doe defendant, Plaintiff will be required to identify him or her with enough information to locate that defendant for service of process. While Plaintiff has provided approximate physical descriptions of two Mendota police officers, the Court cannot order the United States Marshal to initiate service of process based on such descriptions. The Court reemphasizes that Plaintiff will be given an opportunity through discovery to identify the

John Doe defendant police officers. Crowley v. Bannister, 734 F.3d 967, 978 (9th Cir. 2013) (quoting Gillespie, 629 E.2d at 642). Once Plaintiff has "(1) identified the Doe Defendants by their real names through discovery; and, 2) filed a motion to amend the complaint to substitute their real names," the Court will order service on those defendants. Rojas by & through Rojas v. California Dep't of Corr. & Rehabs., No. 2:21-CV-01086-DAD-AC, 2023 WL 7130843, at *2 n.1 (E.D. Cal. Oct. 30, 2023). However, if Plaintiff fails to identify any DOE Defendant during the course of the discovery, the Doe Defendant will be dismissed from this action.

Here, Plaintiff's factual allegations pertaining to the August 2022, October 2022, and November 2022 incidents plausibly suggest the involvement of unidentified Mendota police officers and thus Plaintiff should be given an opportunity through discovery to identify the unknown defendants. Accordingly, based on review of the allegations specific to Does 1-2, the Court finds Plaintiff has stated sufficient facts as to potentially state a cognizable claim for (1) Fourth Amendment Search and Seizure; (2) Fourth Amendment excessive force; and (3) First Amendment retaliation claim against the currently unidentified Doe Defendants. Accordingly, the Court recommends allowing Plaintiff to proceed with claims against two Doe Defendants to be potentially identified through discovery.

## IV.

## ORDER

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action proceed on the following claims asserted in the second amended complaint (ECF No. 23):

   a. Fourth Amendment claims for unreasonable search and seizure against Defendants Gonzalez and Does 1-2 for their actions prior to and at the conclusion of Mendota City Council meetings in August 2022 and October 2022;

   b. Fourth Amendment claims for excessive use of force against Defendants Gonzalez and Does 1-2 for their actions in August 2022 and October 2022; and against Defendants Gonzalez, Renteria, and Does 1-2 for their actions on or

17

around November 18, 2022; and

      c. First Amendment retaliation claims against Defendant Renteria for questioning Plaintiff at his job and following him in November 2022; and against Defendant Gonzalez and Does 1-2 for their alleged harassment, search, and detainment of Plaintiff in August 2022 and October 2022, and November 15, 2022;

3.     All claims against the Police Chief be dismissed with leave to amend; and

4.     All other potential claims be dismissed for failure to state a claim.

These findings and recommendations are submitted to the District Judge to be assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

    IT IS FURTHER ORDERED that the Clerk of Court is DIRECTED to file Plaintiff's second amended complaint (ECF No. 23).

IT IS SO ORDERED.

Dated:   **December 5, 2023**                                 
                                        UNITED STATES MAGISTRATE JUDGE